IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUMIT BANA and JYOTI SIROHI,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. CITIZENSHIP & IMMIGRATION SERVICES; UR M. JADDOU, in her official capacity as Director of U.S. Citizenship and Immigration Services; and ALEJANDRO MAYORKAS, in his official capacity as Secretary of U.S. Department of Homeland Security,<br><br>    Defendants. | Case No. 24 CV 4391<br><br>Hon. Georgia N. Alexakis |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sumit Bana and Jyoti Sirohi are citizens of India who applied to become lawful permanent residents of the United States. U.S. Citizenship & Immigration Services ("USCIS") denied their applications, and they now challenge that finding—as well as the antecedent denial of Bana's I-140 visa petition—as legally erroneous under the Administrative Procedure Act ("APA"). They also challenge the agency's failure to timely adjudicate their I-290B motion seeking to reopen the petition. For the reasons discussed below, the Court lacks jurisdiction to hear this case.

### LEGAL STANDARD

Article III of the United States Constitution limits federal courts to adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to

bring and maintain a suit is an essential component of this case-or-controversy requirement." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). To establish they have standing, plaintiffs must allege (1) they have suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

"[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 169 (2016)). Although "[s]tanding is evaluated at the time suit is filed," *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013), mootness precludes review "[w]hen a party with standing at the inception of the litigation loses it due to intervening events," *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010).

The Court begins by accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in favor of the plaintiffs. *See Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (citing *Panaras v. Liquid Carbonic Indust. Corp.*, 74 F.3d 786, 791 (7th Cir. 1996)). Once the defendant proffers evidence calling the Court's jurisdiction into question, however, "the presumption of correctness that we accord to a complaint's allegations falls away and the plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digital, Inc. v.*

2

*Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (cleaned up); *see also Sapperstein*, 188 F.3d at 856.

## BACKGROUND

### A. Statutory Background

The Immigration and Nationality Act ("INA") provides a three-step process by which a lawfully present foreign national may become a lawful permanent resident of the United States. *See Musunuru v. Lynch*, 831 F.3d 880, 882 (7th Cir. 2016). "First, the employer must obtain a labor certificate from the Department of Labor that certifies that there are insufficient able, willing, qualified, and available workers, and that hiring the alien worker on a permanent basis will not adversely affect the wages or working conditions of similarly employed U.S. workers." *Id.* (citing 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A)(i)). "Second, the employer must file, and USCIS must approve, an immigrant visa petition that assigns the worker to one of the INA's immigrant visa preference categories for employment-based permanent residency." *Id.* at 882–83 (citing 8 U.S.C. §§ 1154(a)(1)(F), 1255(a)(2)). The form used to file this petition is called the Form I-140. *Id.* at 883 (citing 8 C.F.R. § 204.5(a)). Third, a worker must "apply for, and be granted, an adjustment of status to permanent resident." *Id.* (citing 8 U.S.C. § 1255(a)). The form a worker submits to apply for adjustment of status is called a Form I-485. *Id.* (citing 8 C.F.R. § 204.5(n)(1)). Some workers (including Bana) may file their Forms I-485 concurrently with their I-140 petitions, *see* 8 C.F.R. § 245.2(a)(2)(i), but a worker's

3

Form I-485 will not be adjudicated until their underlying I-140 petition has been approved, *see* 8 C.F.R. § 245.2(a)(5)(ii).

Congress has also amended the INA to make I-140 petitions and labor certifications "portable" to new employers for applications that have been pending for at least 180 days so long as "the new job is in the same or a similar occupational classification" as the prior job. 8 U.S.C. § 1154(j); 8 C.F.R. § 245.25(a) (federal regulations implementing § 1154(j)'s porting provision); *see also Musunuru*, 831 F.3d at 884. Workers can request job porting under § 1154(j) by completing a form called I-485 Supplement J. *See* 8 C.F.R. § 245.25(a).

When a worker applies for porting while his or her I-140 petition is still pending, the agency resolves the I-140 petition before addressing the portability request. *See* 81 Fed. Reg. 82,398, 82,418 (2016) ("In the final rule at 8 CFR 245.25(a)(2)(ii)(A) and (B), DHS reaffirms that a qualifying immigrant visa petition has to be approved before DHS examines a portability request under INA 204(j) and determines an individual's eligibility or continued eligibility to adjust status based on the underlying visa petition."). However, "just because an immigrant's I-485 application has been pending for more than 180 days does not automatically render the underlying I-140 petition valid." *Khedkar v. U.S. Citizenship & Immigr. Servs.*, 552 F. Supp. 3d 1, 12 (D.D.C. 2021) (citing *Matter of Al Wazzan*, 25 I. & N. Dec. at 364–67). Instead, USCIS approves the pending I-140 petition "if it was eligible for approval at the time of filing and until the alien's adjustment of status application has been pending for 180 days." 8 C.F.R. § 245.25(a)(2)(ii)(B)(2).

4

B. **Factual Background**

The following facts are taken from plaintiffs' amended complaint [8-1] and the exhibits that accompany it. Plaintiffs Sumit Bana and Jyothi Sirohi are citizens of India who currently reside in Buffalo Grove, Illinois. [8-1] ¶¶ 17–18. On November 2, 2020, DXC Technology Services LLC ("DXC Technology")—Bana's employer at the time—filed an I-140 petition on behalf of Bana. *Id.* ¶ 44. The same day, both Bana and Sirohi concurrently filed Form I-485 applications for adjustment of status based on DXC Technology's pending I-140 petition. *Id.* ¶ 45.

In June 2021, after his I-140 petition had been pending for over 180 days, Bana left his employment at DXC Technology and began working at Wipro Limited. *Id.* ¶ 46. He dutifully filed an I-485J Supplement Form notifying defendants of his new employment on February 11, 2022. *Id.* ¶ 47.

On June 1, 2022, unbeknownst to Bana, defendants sent a request for evidence ("RFE") to DXC Technology seeking clarification on several discrepancies contained in the I-140 petition it had submitted for Bana. *Id.* ¶ 48; [1-1] Ex. E at 28–30. On December 6, 2022, defendants denied the I-140 petition because DXC Technology had not responded to their RFE by the relevant deadline. [8-1] ¶ 54. The following May, defendants denied Bana's I-485J Supplement Form and issued a Notice of Intent to deny his Form I-485 application. *Id.* ¶¶ 61–62.

The next month, Bana filed a Form I-290B seeking to reopen the denials of his I-485J Supplement Form and I-140 petition. *Id.* ¶ 65. On August 7, 2023, defendants

5

denied both Bana's and Sirohi's Form I-485 applications based on the denial of Bana's underlying I-140 petition. *Id.* ¶ 73.

Bana says that, by this point in time, he had never received the RFE that had gone to DXC Technology. *Id.* ¶ 49. He tried unsuccessfully to obtain it via a July 2022 Freedom of Information Act ("FOIA") request to USCIS. *Id.* ¶¶ 50–53. In July 2023, Bana sued USCIS under FOIA seeking to compel its disclosure, and USCIS sent him a copy of the RFE the following month. *Id.* ¶¶ 70, 72; [1-1] Ex. E at 26–31. Bana dismissed the FOIA lawsuit once he received the RFE. [8-1] ¶ 72. On September 19, 2023, plaintiffs sent defendants a response to the RFE. *Id.* ¶ 74.

## C. Procedural History

On September 21, 2023, plaintiffs filed this suit in the United States District Court for the District of Maryland against USCIS, Ur M. Jaddou (in her official capacity as Director of USCIS), and Alejandro Mayorkas (in his official capacity as Secretary of the Department of Homeland Security). [1]. Plaintiffs filed an amended complaint the next month, seeking an order requiring defendants to (1) adjudicate plaintiffs' Form I-290B motion; (2) comply with the INA's procedural requirements; and (3) comply with 8 C.F.R. § 245.25(a)(ii)(B) by providing notice to petition beneficiaries when defendants send RFEs to I-140 petitioners. [8-1] ¶ 8.

Defendants subsequently moved to transfer the case to the Northern District of Illinois. [23]. The district court in Maryland granted the motion to transfer based on improper venue, [25], and the case was transferred to this Court on May 29, 2024, [26]; [27]. On June 27, 2024, defendants moved to dismiss plaintiffs' amended

6

complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. [30].

## DISCUSSION

Defendants argue that the Court lacks jurisdiction to entertain all three of plaintiffs' claims. The Court addresses each claim in turn.

### A. Count I

In Count I of their complaint, plaintiffs seek an order compelling defendants to adjudicate Bana's Form I-290B motion. *See* [8-1] ¶¶ 92–115. Defendants argue that request for relief is now moot "because the defendants have indisputably reopened and reconsidered Mr. Bana's underlying I-140 immigrant petition." [31] at 6. In support, they have attached to their motion a letter USCIS sent to Bana on December 7, 2023, after this litigation began, denying his Form I-290B. [31-1] at 1–3.

Despite bearing the burden to do so, plaintiffs do not directly respond to defendants' contention that Count I is now moot. *See Apex Digital*, 572 F.3d at 444 (once defendant proffers evidence calling the Court's jurisdiction into question, it is plaintiff's burden to prove jurisdiction exists); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Indeed, plaintiffs admit that USCIS reopened Bana's petition, *see* [32] at 4, and their response to defendants' motion to dismiss itself implies that Count I does not present a live controversy, *see id.* at 5 ("Defendants' actions being challenged in Plaintiffs' *Second and Third* Counts … remain a live controversy requiring a remedy to their injuries.")

7

(emphasis added). The Court therefore agrees with defendants that Count I has been rendered moot. Because plaintiffs have already been provided the precise relief they seek (the adjudication of Bana's Form I-290B), there is no injury left for the Court to redress.

### B. Count II

The Court now turns to Count II. There, plaintiffs claim that the denial of the I-140 petition based on DXC Technology's failure to respond to the RFE was arbitrary and capricious in violation of the APA. Specifically, plaintiffs contend that, by denying Bana's I-140 petition based on DXC Technology's lack of response, defendants neglected their duties under 8 U.S.C. § 1154(j) and 8 C.F.R. § 245.25(a)(2)(ii)(B) to adjudicate a pending I-140 petition even where a plaintiff has changed jobs, so long as the job change occurred at least 180 days after a worker submitted their Form I-485. [8-1] ¶ 127. Plaintiffs assert that, as the individual holding the "primary interest" in the petition's adjudication, Bana was "entitled to service" of all requests and notices related to the petition's adjudication. *Id.* ¶ 147.

Defendants first respond that the denial of the I-140 petition was mooted by the agency's December 2023 denial of plaintiffs' I-290B motion. [31] at 7–8. But USCIS's December 2023 decision concluded by "order[ing] that the motion be dismissed and the original decision denying Form I-140 remain undisturbed." [31-1] at 3. Moreover, USCIS's denial of the I-290B motion did not nullify its reasoning for the I-140 denial. In fact, USCIS declined plaintiffs' motion to reopen precisely because plaintiffs did "not present new facts or submit new evidence" that would warrant

8

reconsideration. [31-1] at 3. Given USCIS's own admission that the initial I-140 petition should "remain undisturbed," *id.*, the Court does not see plaintiffs' failure to appeal the subsequent I-290B denial as a barrier to its review. And it is not persuaded otherwise by defendants' citation to *Arbor Home, LLC v. Mayorkas*, 604 F. Supp. 3d 878, 885 (N.D. Cal. 2022), *aff'd*, No. 22-16081, 2023 WL 4819647 (9th Cir. July 27, 2023). In *Arbor Home*, USCIS acknowledged that the reasoning supporting the denial of plaintiff's original petition was erroneous, so it reopened the petition and then issued a second denial "with different reasoning effectively nullif[ying] the earlier NOID and denial." *Id.* Here, the denial of the I-290B not only left the denial of the Form I-140 intact but did so on precisely the same grounds. In this scenario, the denial of the Form I-140 is not a "preliminary or procedural step[]" that would otherwise insulate it from this Court's jurisdiction. *See W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990)).

Finality questions aside, the crux of Count II is that plaintiffs were injured by the lack of notice and opportunity to respond to USCIS's June 2022 RFE to DXC Technology. *See* [8-1] ¶¶ 146–47. Although USCIS's initial failure to notify plaintiffs—and DXC Technology's subsequent lack of response—may have injured plaintiffs by resulting in the initial denial of Bana's I-140 petition, USCIS reopened Bana's I-140 petition after plaintiffs filed this suit. [35-1] at 2. In addition, according to their amended complaint, plaintiffs eventually received a copy of the RFE and sent USCIS a response on September 19, 2023, "documenting [Bana's] eligibility for

9

approval." [8-1] ¶¶ 72–74; *see also* [1-1] Ex. J. The I-290B denial makes clear that USCIS reviewed the information plaintiffs submitted but denied the motion nonetheless because the "only evidence [ ] submitted were copies of Form W-2, Wage and Tax Statements issued to [Bana] by his previous employers, but those had already been made part of the record." [31-1] at 3. Although it may have come much later than they originally hoped, plaintiffs eventually received the relief they seek— namely, the opportunity to respond to the RFE and to have that response considered by USCIS. In this critical regard, the facts here differ from those in *Khedkar*, where the plaintiff had not been given "an opportunity to submit supplemental evidence to USCIS," after the RFE was sent only to a non-responsive former employer, and the agency had not reassessed the plaintiff's I-140 petition in light of additional evidence. 552 F. Supp. 3d at 14–19.[1] As a result, the Court concludes that there is no injury left to redress in Count II.

Even if plaintiffs could establish that they were injured based on the original lack of notice, there is a separate problem: DXC Technology now has withdrawn its underlying I-140 petition (which, in any case, appears to have been in an imperfect state). *See* [31-2] at 1. For the Court to provide any redress, Bana needs a petitioner willing to sponsor an I-140 petition on his behalf. *See* 8 CFR § 204.5(a). Plaintiffs have not alleged that Bana's current employer has filed a subsequent I-140 petition on his

---

[1] The Court takes no stance on whether plaintiffs would have had a legal remedy for such an unremedied oversight, as the district court concluded in *Khedkar*; it notes only that the facts here differ—meaningfully—from those in *Khedkar*. The Court does note, however, that, at least in the context of a revoked petition, the Seventh Circuit has held that it is the new employer—not the beneficiary—who should be notified of the intent to revoke the petition and provided an opportunity to oppose the revocation. *See Musunuru*, 831 F.3d at 890.

10

behalf, and the Court cannot force DXC Technology—a non-party to this suit—to sponsor Bana if it no longer wishes to do so. Thus, even if the Court were to find the agency's denial of Bana's USCIS's I-140 petition were arbitrary and capricious, such a finding would not help plaintiffs without an existing petition on which to proceed.

For these reasons, the Court lacks subject matter jurisdiction over Count II.

### C. Count III

In Count III, plaintiffs challenge the denial of their Form I-485 applications for adjustment of status as arbitrary and capricious under the APA. The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. However, "Congress has sharply limited judicial review in the immigration context, and 'the APA's general provision authorizing judicial review of final agency actions must yield to … immigration-specific limitations." *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1027 (7th Cir. 2023) (quoting *Dijamco v. Wolf*, 962 F.3d 999, 1003 (7th Cir. 2020)).

Relevant here, § 1252 "prescribes the procedure for judicial review of final orders of removal and otherwise strips courts of jurisdiction to review orders of removal and denials of discretionary relief." *Id.* at 1028. More specifically, § 1252(a)(2)(B) provides that "[n]otwithstanding any other provision of law … and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section … 1255 of this title." 8 U.S.C. § 1252(a)(2)(B). Per its plain language, § 1252(a)(2)(B) "operates to

11

eliminate judicial review of the denial of an adjustment-of-status application by USCIS." *Britkovyy*, 60 F.4th at 1028; *cf. Patel v. Garland*, 596 U.S. 328, 347 (2022) (finding that § 1252(a)(2)(B) precludes judicial review of factual determinations underlying the denial of discretionary relief in immigration proceedings).[2] Because plaintiffs seek review of a discretionary decision to deny their adjustment of status under § 1255, § 1252(a)(2)(B) bars this Court from reviewing their claim.[3] *Accord Gupta v. Mayorkas,* No. 24 CV 4572, 2024 WL 4476121, at *2 (N.D. Ill. Oct. 11, 2024) (Section 1252(a)(2)(B) stripped court of jurisdiction to review a discretionary decision under § 1255); *Singh v. Garland*, No. 23-CV-3920, 2024 WL 4333288, at *2 (N.D. Ill. Sept. 27, 2024) (same).

Plaintiffs' primary response is that they are seeking review of agency action under § 1154(j)—not § 1255—and that defendants improperly attempt to transform their claim into an adjustment-of-status question. *See* [32] at 9 (Count III "specifically [does] not arise under 8 U.S.C. § 1255; Plaintiffs only seek relief under 8 U.S.C. § 1154"). Although plaintiffs are correct that § 1154(j) and not § 1255 affords workers the ability to port while their applications are pending, the relief plaintiffs ultimately

---

[2] Section 1252(a)(2)(D) does preserve judicial review of constitutional claims and questions of law, but only for review from a final order of removal. *See* 8 U.S.C. § 1252(a)(2)(D); *Britkovyy*, 60 F.4th at 1028 (Section 1252(a)(2)(D)'s carveout was "inapplicable because [plaintiff] ha[d] not received a final order of removal"). Here, because plaintiffs are not appealing a final order of removal, § 1252(a)(2)(D) does not provide an avenue for review of their claims.

[3] The Attorney General ultimately retains discretion to grant or deny adjustment of status under § 1255. *See* 8 U.S.C. § 1255(a) ("The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence ….") (emphasis added).

12

seek in Count III relates to the denial of their adjustment-of-status applications. That much is evident from the direct link plaintiffs draw in their complaint between the adjudication of their I-485J Supplement Form and the denial of their Forms I-485. *See* [8-1] ¶¶ 166–68. Thus, even if the Court were to find that USCIS violated its obligations under § 1154(j) by failing to send plaintiffs the June 2022 RFE, or notify them of its existence, such a finding would be useless to plaintiffs without an order vacating the denial of their Form I-485 applications. And, as discussed above, the denial of their Form I-485 applications is clearly a "judgment regarding the granting of relief under section … 1255" precluding this Court's review. 8 U.S.C. § 1252(a)(2)(B). Plaintiffs cannot avoid this jurisdictional bar by challenging a predicate step in the process. *See Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) (interpreting the ban on judicial review of discretionary decisions in §1252(a)(2)(B)(ii) to include "not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*"); *cf. Soni v. Jaddou*, 103 F.4th 1271, 1273 (7th Cir. 2024) (writing, in the context of the jurisdiction-stripping provision in 8 U.S.C. § 1182(a)(9)(B)(v), that "[n]o review means no review; the statute does not need to list all of the many potential legal theories that are not reviewable").

For these reasons, the Court lacks subject matter jurisdiction to hear the merits of Count III.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss for lack of jurisdiction. [30]. The dismissal is without prejudice, meaning that plaintiffs are free to try again in federal court if they can cure the jurisdictional defects the Court has identified. *See In re IFC Credit Corp.*, 663 F.3d 315, 320 (7th Cir. 2011) ("[D]ismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice.") (citing Fed. R. Civ. P. 41(b)). Civil case terminated.

_____
Georgia N. Alexakis
United States District Judge

Date: 1/10/25